The next case today is Ana Vizcarrondo-Gonzalez versus Thomas J. Vilsack et al. Appeal number 20-2157. Attorney Fagot, please introduce yourself for the record and proceed with your argument. Yes, thank you. May it please the court, once again, my name is José Gabriel Fagot-Díaz and I am co-counsel for the appellant in this case. Your honor, may it please the court, this case basically boils down to a Title VII case filed against the United States Department of Agriculture. Also included in the complaint was a co-worker of the appellant by the name of Elia Rivera. And basically, your honor, the appellant claimed below that she was with her night supervisor, whose name is José Sánchez. Basically, the case was dismissed below on the merits regarding the Title VII claims for hostile working environment retaliation was dismissed by the trial court initially. And then the only remaining claim that was later subsequently was the claim for a independent tort action by Mr. Elia Rivera on the appellant for an event that took place on January 14th of 2016. In regards to that particular matter, the instructed the U.S. Attorney's Office to state or requested that it issue a Certificate of Employment certification stating that Mr. Rivera's actions that took place on January 14th, 2016 were within the scope of his employment. It baffled us at the trial court level that this was never requested by either party, it was just a court on its own notion. But nonetheless, the court held a hearing as to whether Mr. Elia Rivera's actions were within the scope of his employment. Because if they were, then he would be entitled to the Westfall Act of Immunity, and the case would be dismissed. That's precisely what happened at the trial court below. Part of our issues on appeal regarding that particular matter, your honors, was the fact that during the direct examination of Mr. Rivera, my brother counsel tried to inquire as to what were the personal motives or what were the motives of Mr. Rivera in the alleged events that took place on January the 14th. There was an objection raised by the defense counsel as to the fact, just general objection was not substantiated by any way. The court apparently didn't allow us to continue that line of questioning of Mr. Rivera as to what were his motives behind the events that took place on January the 14th, 2016. That in itself was a reversal error in our opinion, because the law of the state under the Federal Tort Claims Act to determine whether an employee is acting with the scope of employment or not is the law where the facts took place, clearly Puerto Rico law, and this is stated in our brief. One of the elements that's considered by the Puerto Rico Supreme Court as to whether the superior respondeat superior doctrine applies or not is whether the agent or the employee was acting purely on personal motives. So in that regard, the question that was going to be propounded to the defendant Rivera was precisely that, whether he had any personal animosity against the appellant when he snatched his jacket and in so doing, you know, brushed her back and her buttocks with his hand. And the personal motive was related to the fact that previously Ms. Vizcarrondo had filed a sexual harassment grievance with USDA. It was investigated and Mr. Rivera was admonished for that conduct and was suspended. So, you know, clearly you would follow that the question that was asked by my brother counsel during the hearing was proper and it should have been answered to the effect that, you know, he did have some personal motives because he had, you know, he had, he was suspended from his employment, resulting from the grievance that our client filed previously. So basically in that point, specifically you understand that the court erred in not allowing that testimony. I thought that the court counsel, I thought with respect specifically to the jacket incident, the court assumed motive but concluded rather than dealing with motive or pretext, concluded that the incident wasn't sufficiently serious. Well, it might have been insufficiently serious for sexual harassment purposes. But have you addressed that in your appellate briefs? If I'm right that that's what the court ruled on, have you addressed it in your appellate brief? No, well, your honor, to answer your question, I understand that we did question the fact that the court didn't allow us to present evidence as to that fact. As to motive. As to motive, correct, which is one of the elements. I'm saying that I thought the court assumed motive and that the question that the court ruled on with respect to that incident was seriousness of the incident, of the conduct. Right. And have you addressed that in your appellate briefing? You're not talking about it here at oral argument. No, I don't believe we did, your honor. We just assumed the court didn't allow us to present evidence as to that particular element of the, you know, of the respondent. Seriousness of the conduct relative to a finding as to whether he was acting within the scope of his employment. Right. Was that addressed? Well, no, your honor, Judge Thompson, I don't believe so, but it's not whether it's serious or not. It's whether it's, you know, one issue is whether the events that took place on that date constitute sexual harassment under Title VII and all the, you know, the Supreme Court case law on that matter, whether it's sufficiently severe, but this is a whole different thing. This is a tort, a state tort, which for physical aggression, which is independent of to the Title VII analysis in this case. So under Puerto Rico law, does the commission of a tort, you're arguing that that automatically takes it out of the scope of employment? Yes, because it doesn't, it's not in the furtherance of the employer's interests to commit a tort in, you know, even though it's further the U.S. Department of Agriculture's interest, you know, in submission as a federal agency. Did I answer your question, Judge? Yes. And what did the district court find in that regard? Well, that's part of our issues on appeal. The court, you know, in our view, completely disregarded Puerto Rico law in, you know, and just on that point and just ruled that, you know, that because Mr. Rivera was on his way out and he had been previously there taking some propaganda, not propaganda, some materials that had been seized off an airport, I mean, off an airplane that didn't conform to the, you know, federal. This question about scope of employment was a federal question, not a Puerto Rico law question. Well, I beg to differ, Your Honor. The case law cited in our brief states that the issue of whether an employee is acting with a scope of employment is determined by the case law where the events took place. And that's cited in our brief. I believe, if I'm not mistaken, yes, it's a case from the First Circuit, Vernet versus Serrano-Torres. That's cited in our brief, Your Honor. I believe that answers your query, Your Honor. So, to recap, it's... I don't understand. Maybe I'm just missing something fundamental here, but there's got to be a federal component to that question. Puerto Rico law can't just say things that the federal government understands to be in furtherance of the duties of the federal government aren't, and therefore, for purposes of the FTCA, take it outside the scope of employment by missing something. Well, if I understand your question, Judge Barron, the, you know, granted that the Federal Tort Claims Act issue was raised, as a matter of fact, by the trial court, because in our complaint... I'm sorry. Was it for the purpose of the Westfall, or was it for the purpose of the West? But I guess I'm not... Under the West, we're talking about the scope of employment for the purpose of the Westfall Act or for the purpose of the FTCA? No, under the FTCA, which was raised by the trial court below. So how can it be that the scope of employment is just purely a state law question? I just don't quite understand how that... That wouldn't seem to make very much sense. Well, that's what the precedent that's decided in our brief says here. You know, it's decided, you know, because respondeat superior doctrine is established by the... I think it's Lex Loci, the term Lex Loci, and that's cited in our brief, Your Honor. So it's Puerto Rico law that is used to determine whether the acts of the federal employee fall within the scope of employment. If it falls within the scope of employment, then there can't be a claim, particularly when, in this case, cases for assault and battery are especially excluded from the purview of the FTCA. Counsel, thank you. And if you would mute your audio and your camera. Will do, Your Honor. And we'll hear from Mr. Conner now. Yes. All right. Good afternoon. Greg Conner for the Secretary and the Department of Agriculture. I'll start briefly by addressing Judge Barron's question. I did understand the case law, and I'll agree with the opposing counsel. I did understand the case law in suits against the United States to apply local law. This is what the district court addressed as the law of the circuit, or excuse me, the law of the place. But what's your answer to your opponent's account of local law? Okay. The district court applied these factors. And first of all, even assuming, I think there are really two points from my opposing counsel. The first is that there was some personal motive on behalf of Mr. Rivera. And the district court said, sort of along the lines of Judge Howard's question, you know, even if that's the case, that's not the question. The question is whether it's a purely personal motive. And when there are mixed motives between, you know, some sort of ill will, but also acting on behalf of the employer, that that weighs in favor of determining that it was within the scope. And the other factors. But why wouldn't motive go to the issue of whether the employee was furthering a desire to serve and benefit the employer's interests? Wouldn't motive be important in making that determination? I think there is some overlap. The district court, I can provide the factors if you want. The district court said that under Puerto Rican law, it's whether the act furthers the interest of the employer, is reasonably related to those interests, and whether it was out of purely personal motive. And addressing the conduct of Rivera that day, he was in between an overtime shift and his regular shift. He discarded contraband, grabbed the jacket, then went to check the log for his next location. And the district court said that, you know, with these overlapping factors, that it was furthering the employer's interests, that he have his uniform with him, that he report to the right place at the right time, that the contraband is discarded as it's supposed to be. You can commit an assault in between carrying out the responsibilities of the job. So conduct can be innocent and non-innocent. I think I agree with that. And again, I would point to the district court's analysis, weighing all of these factors and determining that it was within the scope. I'm not saying that it's impossible for a tort to be purely personal motive. But in this case, the alleged tort, which sort of has evolving versions, the alleged tort was at least partly grabbing of his uniform to take to the next station. And that, again, the district court determined. Given the prior history between these two and the fact that he had already been suspended for engaging in harassment, why wouldn't a reasonable inference have been that he was continuing? I, are you asking within the context of the tort claim or the Title VII claim? Okay, well, I'm not sure that helps Rivera to say that it was a continuation for the local tort claim. Again, I think as long as the district court is correct to weigh these factors and then the defendant Rivera is substituted by the United States. So I don't think the history helps him in terms of the scope determination. So if he was not acting within the scope, the lawsuit could have continued, correct? Yes, I believe that the word, the wording that the case law uses is resubstitute that upon certification by the United States attorney, that the federal government substitutes the individual employee, and then the individual employee can be resubstituted if the district court determines that he was not acting within the scope. So are we reviewing this for clear error? That finding that he was? I will have to check the standard of review. I did not think it was clear error. It was as a factual determination or a legal determination as to whether he was or was not acting within the scope. I think it's mixed. And in our brief, we do have a case that says it's de novo. So it's applying the facts to the law based on those standards. And by the way, the cases, I'm forgetting some of them because they're applying the law of other places. But there are First Circuit cases applying, I think, the restatement because that's what's used in similar type of legal analysis, whether he was acting within the scope of his employment. Can I just understand? So you're right that the record, at least as I understand it, says that the jacket incident involves him grabbing a uniform, or at least touching the uniform, which would push towards the idea that it was the action taken was within the scope of his employment. What are we supposed to focus on? The tortuous aspect of it? Or the stream of conduct with which the alleged tortuous conduct was connected? Do you see what I'm saying? In other words, let's say it's a uniform, but he grabs the uniform violently in order to hurt the other person. Well, it's hard to see how that form of touching of the uniform furthers the employer's interest. Which way am I supposed to look at it? The fact that the conduct involved touching a uniform, which is related to employment, or the fact that the way he touched the uniform resulted in brushing the buttocks and the back in a way that seems not to further the employer? I haven't come across a case that's made that distinction. I think it would be a tougher case in your hypothetical if there was some sort of violent outburst that's clearly unrelated to employment. I think you're right that that would be more difficult. I just haven't seen cases that make that distinction. So, for purposes of this case, I think the facts as described should be applied to the factors the district court discussed, and those seem to suggest you... Is that the relevance of the seriousness finding? In other words, that the just under Puerto Rico law would make sense to think that it was an action that was related to getting the uniform? I mean, I guess it just seems like this is a relatively key point. Depending on how you resolve it, it's either within the scope of the employment or not. My understanding, and perhaps I'm mistaken, is that the severity of the conduct is addressed in the Title VII opinion. Okay, so then just going back to putting that aside, then I mean just I guess I'm... If there's not much case law on it, and the case turns question, and it's a question of Puerto Rico law, if you go one way, plaintiff wins. If you go the other way, plaintiff loses. What are we supposed to do? Well, presumably you would expect the plaintiff to have a good argument about why the district court's analysis was incorrect, and the only argument she makes, as far as I can discern, is saying that, you know, sort of jumping to the conclusion, well, it was assault, so therefore it's partially personal. She doesn't even go so far as to say it was entirely a personal motive, but again... I thought her argument was that because the motive was important, and because she was precluded from exploring motive, that would help us understand why, for instance, instead of yanking the coat, he didn't just say, could you get up and give me my coat? I agree that there is that additional point. I just don't think it's supported by the record. The objection that she is challenging is about the instructions. First of all, it's around page 100 of the appendix, and her attorney asks about the instructions Rivera was given upon returning to work. There is an objection and a pretty quick sustained, but the district court elaborated that we're going to stick to questions about the scope of the employment, and there weren't, you know, follow-up questions about the scope of the employment. So, I don't think the record suggests she was thwarted from addressing his motive. I think the problem is she jumped to the conclusion that it was assault, therefore it had to be purely personal. I will briefly say that on the Title VII claims, I think this court can look to the and I believe 434 of the appendix, and I think that should be dispositive in terms of the Title VII claim. So, unless there are further questions, I'll ask this court to affirm. Thank you, counsel. That concludes the arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of court. Counsel, you may disconnect from the meeting.